May it please the court. Just one moment, I think we're still getting settled. Sorry. Thank you. May it please the court. I'm Jocelyn Hunt with the Federal Defenders of Montana, representing Mr. Sanchez in this case. I'll start out by saying that we stand on the briefs as it concerns the suppression and jury instruction issues, and I'll focus today on the Brady and Rule 33 arguments. This case is about a calendar note that the government actively suppressed for 91 days after Mr. Sanchez was convicted. This case has always been about who did what. There were five people present on the night of the incident, April 16, 2016. Four of those people testified. So what they said and how the jury assessed their credibility made the difference in their determination of Mr. Sanchez's guilt. The calendar note that came to light the day after Mr. Sanchez's verdict, something that the government was aware within 24 hours, stated that this person, who is three fingers, we believe, and the evidence strongly supports, was full of regret. She didn't actually say truthfully what she, the extent to her involvement in the crime. She notes that in the calendar note. She states that she was outside of the car and got the gas can. These are two statements that are completely contrary to what she said at trial. Do you agree that this is impeachment evidence? I agree, yes. It is powerful impeachment evidence, as noted by the district court. So then the question I have with respect to your argument is basically you're saying, well, if the impeachment evidence, you know, had come in, then the jury would be more likely to realize that testimony afterwards would be the truth, that having been confronted with this impeachment evidence, you know, there would be a light bulb would go off and then the jury would put all this together. My concern with the argument, and I would appreciate your response, is that basically turns impeachment on its head because in every case where it's just impeachment evidence, you have that situation. Maybe it will impeach. Maybe it won't. Maybe the person will be more believable. But I don't see how that changes the legal analysis here. It changes the legal analysis in this case because it's not just merely impeachment evidence. The court noted it's powerful impeachment evidence, and it goes directly to how she testified, and her testimony is not just about getting the gas can if this note is to be believed and presented if the jury heard that. She talked about how the others were involved. If the jury believed Three Fingers was more credible, the whole narrative changes and how Mr. Sanchez, being the primary bad actor as found by the jury, that whole narrative is changed by presentation of what even the district court found as material, powerful impeachment evidence. You mean the jury is not going to believe the other witnesses? Is that what you're saying? Yes, that is what I'm saying. Based on this impeachment evidence of Three Fingers? Based on, yes, that she would be presented with a note that places her in a more culpable position, and also if she is to be believed that she was outside getting a gas can, then maybe also the other testimony she talks about, Mr. Sanchez was not the threatening party. Mr. Sanchez. Become more believable with this evidence. That's correct. But isn't this the classic, are you lying now or are you lying then? You know, that whole thing colloquy people go through. Isn't that what impeachment evidence is? I don't understand quite how the fact that it might be powerful impeachment evidence actually changes the fact that it's not substantive exculpatory evidence. Powerful impeachment evidence can support a new trial, and in this case was still a Brady violation because it was actively suppressed, and affects the reasonable probability that the jury would have not found Mr. Sanchez guilty of first-degree murder under an aiding and abetting a theory. They had before them a first-degree murder jury instruction and a second-degree murder jury instruction. As I understand your theory, by being impeached, she now is going to tell the truth and the jury is going to believe her. But there's another twist, it seems to me. She denied that she created that, what is it called, the note, calendar note, isn't that the case? Correct. So she gives testimony, she's impeached. You say she's now more credible, but she denies that she created the note. That's correct, Your Honor. Doesn't that take us in full circle? What we're saying is, in this case, the jury, on a case where it mattered most who did what and who the jury is assessing credibility, at least under a Brady analysis and under a Rule 33 analysis, Mr. Sanchez should be afforded the opportunity to have that evidence assessed by the jury and not have it disregarded in the denial that came after. It seems to me another problem is, how is that note exculpatory in any way of your client? We're not saying that it's exculpatory. It's inculpatory maybe of three fingers, potentially, if it's her note. But how does it really help your client? It doesn't have to exculpate him completely. It has to leave... At all? At all, how does it do it? It doesn't even have to be exculpatory evidence whatsoever. It can be impeachment evidence can still warrant a new trial if there is a reasonable probability the jury would have come to a different conclusion, and here that is, because it affects the narrative that she presented to the jury and how she would be believed and how they would assess the credibility of the other people involved. But he did have an opportunity to use this for a new trial motion, correct? That is correct. Time-wise. So it sort of acknowledged your point. It's an odd sequence of disclosure here. But given that he still had the new trial remedy, what's the prejudice then? If I'm understanding your question correctly, the prejudice still is that this evidence was not allowed to go before the jury. The district court made the assessment for the jury, utilizing a post-Brady trial rule with no citation to authority that because we got to present our argument post-trial, that's the remedy. This is a Brady constitutional violation, and there is prejudice in this case because the jury could have convicted him of second-degree murder. Instead, he was convicted of first-degree murder. And this evidence is evidence that should go back for the jury to make that assessment. I was going to say, how this impeaching evidence would lead the jury to maybe discredit the other witnesses. I'm having a hard time connecting that argument. So if this evidence was presented, you would have her placed outside of the car when she said she wasn't, getting a gas can. We don't know what other story would develop about that gas can, should we be able to present that. Separately from that, her other testimony did not place Mr. Sanchez in the culpable position of first-degree murder. It placed him not threatening anybody. It placed him not pouring gasoline on anybody. It placed him not lighting anybody on fire. Those statements came from Whiteman and Frank Sanchez. If the jury believed three fingers over Whiteman and Sanchez, they would not have found him guilty of first-degree murder. They would have had the ability to assess her testimony in light of a second-degree murder jury instruction. Okay. If there are no further questions, I'll reserve the rest of my time for rebuttal. You may. Thank you. Good morning, Your Honors. Leif Johnson for the United States. And may it please the Court. I guess I'll dive right into the calendar entry issue. And I think, for the record, I just want to run through the timeline on that calendar entry. It was discovered, obviously, the day after the jury verdict came down. But forensic analysis showed that that calendar entry was created sometime around June the 22nd, about two months after the murder. And I think it's useful noting, for the record, that Three Fingers later gave grand jury testimony. She also testified at trial. And she gave two post-conviction interviews. And if you believe the calendar entry, which was never authenticated to her, it basically expresses regret about not fully telling the truth. She clearly had four opportunities to tell a more full story as contained in the calendar entry, and she never did it. And, in fact, as Judge Huck noted, she denied ever writing the calendar entry when she was confronted directly with it post-conviction. So we have that. Secondly, is this merely impeaching evidence? The district court basically found, at page 33 of the record, that it is merely impeaching for the very good reason that Three Fingers was the least incriminating of the four witnesses who discussed the murder. And that, for an important reason, is that she never testified about the events that happened outside the car. So even if this calendar entry was powerful, incriminating evidence that could discredit her completely, the government's case with the remaining three witnesses was very strong because it dealt with the events that happened outside the car. One of the statements counsel made this morning was, well, that the calendar entry would establish that Three Fingers was outside the car and that she may have observed what happened with the gas can. And just to set the scene here, her testimony, and this is roughly in the 200s in the record, her testimony is that, corroborative of the other witnesses, that when they were in the car, White Man gets in a fight with the victim, Rides Horse, in the back seat. White Man is reaching back behind the front seat. That fight continues. They say, pull the car over. The defendant driving the car pulls the car over, and everyone gets out. And at that point, Three Fingers gets out with everyone. And this fight between White Man and Rides Horse then progresses, and it gets worse. And at some point, she gets so beaten, they strip her of her clothes. And then things really start to get serious. And at that point, and this is what Three Fingers basically says, at that point, DiMarzio and Frank Sanchez basically said, get in the car. And at that point, they had opened the trunk and they were looking for the gas cans. She mentions that in her testimony. And she was ordered into the car by the defendant, his brother, and White Man was still out of the car at that point. And then from there forward, they tell her, stay in the car, turn up the radio, and don't look out, which she does. It's fairly incriminating evidence on its own, but it's certainly not incriminating evidence on what was going on outside the car. So to the extent that the calendar entry mentions a gas can, she already mentioned the gas can, and it doesn't necessarily contradict her testimony on that, nor does it contradict any of the other testimony about the gas can. As we know from Frank Sanchez, the defendant asked him to hand the gas can, and at that point, White Man testified that she observed the defendant pour gas on the victim and light her on fire as they all ran to the car. And as you'll recall from Three Fingers' testimony, she brought that story full circle when she remembers the three of them running back to the car and jumping in and threatening them not to look outside and not to say anything. So her testimony is incriminating, and to the extent that her credibility is somehow bolstered by this stream of inferences that the defense would like to concoct here, it simply doesn't change anything. Whatever is in the note, which is that she may have kicked her on the side of the head and that she may have helped find the gas can, it doesn't diminish the other testimony that she gave in the trial and certainly doesn't affect the other testimony about the events of the murder. And I would ask the Court to look to the Hinkson case, which I know the district court relied on here. Hinkson made clear that in order for impeaching evidence to satisfy the new trial requirement, it has to be more than mere speculation and post hoc speculation about how the impeachment might have played out at trial. And that's clearly what they're asking for here. And we are mindful of the dissent in Hinkson and its admonishment that there are times when impeachment evidence can satisfy the requirement for a new trial, but it has to be central to the evidence that resulted in conviction. It has to be central to the government's case. And they simply can't make that argument here. It might have been mildly impeaching of three fingers, but it certainly wasn't powerful impeachment evidence that undercut the government's primary evidence of conviction. If the Court has no questions of me, and I think we'll rest on our brief on the remaining issue and ask the Court to affirm. Thank you. So the discussion today has been about it seems like that we're speculating or we have a stream of inferences for this Court to undertake. There is a certain amount of speculation because we don't know what the jury would have done with this evidence. The fact remains under Brady and under Rule 33, I definitively know that those tenets of law require fairness. And the fairness in this case does not exist as long as there are four witnesses present that night. The jury heard testimony as to what occurred from those four witnesses, and now we have a calendar note placing one of those witnesses in a different posture than how she testified. It is not to be reviewed in just a vacuum with just her testimony. The review is in totality as it concerns the entire trial. Her testimony affects the credibility and weight to be given to her and to the others. But only with regard to her participation. She held that back, you know, a human reaction to hold that back. But how does that impeach the rest of her testimony? How does it impeach the rest of her testimony? Or anybody else's testimony, for that matter. Because it places her outside of the car getting a gas can. We also, if the jury is to believe that what she's saying is true, is more true than what Frank Sanchez and Angelica Whiteman are saying, they're not going to believe that he's the one outside getting the gas can, pouring the gas, lighting the lighter. But she doesn't support that proposition. She just says, I did more than I admitted. And that's essentially, if she were the defendant, it would be strong impeachment. But I just don't see how it fits into this scenario. How it really helps your client. She, how she is to be assessed, credibility, affects the others because it's for the jury to determine who is doing what. Again, if she is the one who is to be believed more, what she says about Whiteman threatening others, what she says about Frank undertaking the actions he did, will be believed more than Angelica and Frank, who both stated their participation was limited in the event. That's how it affects the whole narrative. And Mr. Sanchez's offense conduct with regard to that. We are asking in this case, for this case to go back so the jury may do its job and assess this evidence because we cannot know definitively what it would do. Maybe the jury would come out with the same verdict. But again, we have a first degree murder charge and a first degree murder jury instruction as well as a second degree murder jury instruction. There is a big difference between those two. If the jury believes that Mr. Sanchez was not the primary bad actor, it is incumbent on this court to send back this case so that that evidence can be presented and that assessment can be made. Thank you. Thank you for your argument, Ms. Hunt. Also, thank you, Mr. Johnson. Both of you, again, coming from Montana. The case of United States v. Sanchez is submitted.
judges: McKeown, Paez, Huck